824 So.2d 661 (2002)
Derrick POWELL, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-01873-COA.
Court of Appeals of Mississippi.
August 20, 2002.
*662 Webb Franklin, Greenwood, attorney for appellant.
Office of the Attorney General by Deirdre McCrory, Jackson, attorney for appellee.
Before SOUTHWICK, P.J., LEE, and CHANDLER, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. After a bench trial, Derrick Powell was found guilty of possession of marijuana. Powell appeals arguing that evidence of the marijuana should have been suppressed because the drugs were found after an illegal search. We uphold the search, though on grounds other than those relied upon by the trial court. Consequently, we affirm.

STATEMENT OF FACTS
¶ 2. On May 5, 2000, a search warrant was executed at a residence in Winona, Mississippi. During the search the officers divided their efforts, some participating in the search of the interior of the residence and others providing outside security. Powell, his mother, and his girlfriend, Latisha Merritt, all were present during the execution of the search warrant.
¶ 3. A canine unit was outside of the residence. According to one officer's testimony, the dog was allowed out of the patrol car in order to relieve itself prior to its involvement in the search. When it was close to the automobile that Powell drove, the dog indicated the presence of drugs. The vehicle was located across the street from the residence and was not listed as an item to be searched in the warrant. Taking notice of the dog's behavior, one of the officers went inside to ask Latisha Merritt for permission to search. Merritt consented. Before he returned to notify the other officers, the vehicle's trunk had already been opened. Found in the trunk after the officer returned with permission was 606.9 grams of marijuana. Powell admitted that the drugs belonged to him.
¶ 4. After a hearing on Powell's motion to suppress, the trial court found that the consent to search the vehicle was invalid because the search began prior to the consent. The court instead found that Powell had no standing to assert a Fourth Amendment violation. This was because Powell neither was the owner of the automobile *663 nor was he in lawful possession of it.
¶ 5. Powell subsequently waived his right to a jury trial. The case was submitted on stipulated facts. Powell was found guilty of possession. His appeal has been deflected here.
¶ 6. We initially remanded this case to the lower court for findings as to these questions.
Question 1: Was consent to search the vehicle in which the contraband was discovered voluntarily given by Latisha Merritt or some other person with the authority to grant such consent, and without any knowledge on the part of the person consenting that a search potentially had already begun?
¶ 7. The lower court determined that neither Latisha Merritt nor Mississippi Bureau of Narcotics Agent Mike Perkins had knowledge that the search was already in progress when Merritt gave Agent Perkins consent to search the vehicle.
Question 2: Was the dog taken near the vehicle in which contraband was found in order that the dog could relieve itself, and while being walked away from the house for that purpose gave the normal indication to its handlers of the presence of contraband within the vehicle, or was that explanation a pretext for a purposeful taking of the dog near the vehicle to determine if the dog would alert on the vehicle?
¶ 8. The trial court took judicial notice of the fact that dogs frequently "mark their territory" when entering unfamiliar surroundings. The trial court accepted the explanation offered by the officers that the dog was released from the patrol car so it could relieve itself prior to searching the house.

DISCUSSION

I. Standing
¶ 9. Whether Powell has standing to contest the search of the Merritt vehicle is a question of law except to the extent the facts of ownership and use are contested. We perform a de novo review of that legal issue. Peterson v. State, 671 So.2d 647, 652 (Miss.1996).
¶ 10. The right to be free from illegal searches is a personal right. Unless his own rights were violated by a search, a defendant cannot prevent the use of evidence discovered in the search. White v. State, 571 So.2d 956, 958 (Miss. 1990). This issue of standing is resolved through two inquiries: did the defendant have a subjective expectation of privacy in the placed searched; from society's perspective, was an expectation reasonable? Rakas v. Illinois, 439 U.S. 128, 151, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). The Court stated that the ultimate question is not whether a defendant has property rights in the area searched, but whether that defendant has a reasonable expectation of privacy in the invaded place. Id. at 143, 99 S.Ct. 421.
[S]uppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence.
Alderman v. United States, 394 U.S. 165, 171-72, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).
¶ 11. During the suppression hearing, Wesley Merritt testified that title to the vehicle was registered in his name. He had given permission to his daughter, Latisha Merritt, to use the vehicle. Mr. Merritt testified that he did not transfer the title to the vehicle to his daughter because she was only fifteen years old at the time *664 he gave it to her. He testified that he never gave his daughter permission to allow Powell or anyone else to use the vehicle.
¶ 12. Powell claims that an expectation of privacy arises from the fact that his girlfriend, Latisha Merritt, with whom he lived, allowed him free use of the automobile. The State stipulated that Powell had the girl's permission. Through surveillance prior to the execution of the search warrant, the officers knew that Powell frequently used the automobile. Powell argues that because he had Latisha Merritt's permission, he had an actual and reasonable expectation of privacy in the vehicle.
¶ 13. Powell refers us to a federal precedent in which a person who was employed by the renter to drive a rental truck from New York to Dallas, had standing to object to a warrantless search of the truck. United States v. Kye Soo Lee, 898 F.2d 1034, 1038 (5th Cir.1990). The court did not discuss whether the rental agreement allowed the renter to permit others to drive. Only if the rental agreement prohibited the renter from allowing anyone other than specifically authorized individuals to drive the truck would the case be analogous to our facts. To compare our case, here Latisha Merritt was given the vehicle by the actual owner. The father did not authorize his daughter to permit others to use it. Nonetheless, she permitted her live-in boyfriend Powell to do so. We do not find assistance from Kye Soo Lee on whether it is reasonable for a person to expect privacy in a vehicle impermissibly loaned him by the authorized user.
¶ 14. Powell also refers us to a precedent in which a passenger challenged the search of the automobile in which she had been riding. United States v. Martinez, 808 F.2d 1050, 1056 (5th Cir.1987). The passenger was the girlfriend of the absent owner and had his permission to be using the car. The Fifth Circuit found this to be sufficient to give the passenger standing to contest the search. Id. Whether the girlfriend had the owner's permission to allow someone else to drive the car was not an issue in the appeal. We do not find Martinez helpful, since there the defendant was the one who had the owner's authority. The key element in determining Powell's standing is that his use was allowed by someone who had permission but who was not supposed to grant others permission.
¶ 15. We do not find that the terms of an oral loan agreement between father and daughter are controlling as to reasonable expectations of privacy for Fourth Amendment purposes.
Other factors to be weighed include whether the defendant has a possessory interest in the thing seized or the place searched, whether he has the right to exclude others from that place, whether he has exhibited a subjective expectation that it would remain free from governmental invasion, whether he took normal precautions to maintain his privacy and whether he was legitimately on the premises.
United States v. Haydel, 649 F.2d 1152, 1155 (5th Cir.1981). Insofar as the evidence reveals, this was Powell's principal, usual mode of transportation. Powell through his girl-friend's loan of the car had been given the implicit right to exclude others except for his girlfriend and her father. He had been using the vehicle freely. We find that he had a possessory interest. Not having the legal right to use the vehicle would have considerable impact on the incidents of liability that grow out of non-permissive use, such as for insurance coverage. But insofar as criminal law is concerned, Powell had a reasonable expectation that the contents of this vehicle *665 would not be searched without Fourth Amendment-compliant justification.

II. Consent
¶ 16. During the suppression hearing, the State put on evidence that Latisha Merritt had given permission to search the vehicle. The vehicle's registration was introduced into evidence. Merritt's father testified that he had given his daughter the car but had not authorized her to let anyone else drive it. Thus the State presented uncontested evidence that the person given possession by the lawful owner had consented to the search. The only evidence also was that though the trunk was opened before the officer returned to the vehicle after obtaining the permission, there was no examining of the trunk until that officer informed the others of the consent. Nothing in the record indicates when the consent was given in relation to when the trunk was opened. We only know that the officers at the vehicle did not learn of the consent until after the trunk was opened. The contraband that was found was in plastic bags underneath the tire located in the trunk.
¶ 17. After this evidence was presented at the suppression hearing, the trial judge stated that he was "satisfied that there was not a valid consent when the car was searched." The judge added that "[y]ou can't cure that after the fact." Being rejected on consent, the State then argued that Powell had no standing since the vehicle's owner had not given his daughter the right to permit others to use the car. The court agreed that testimony as to standing should be presented. After hearing that testimony, the trial judge determined that Powell did not have standing.
¶ 18. The issue we face now after finding that there was standing, is whether the matter of consent is procedurally as well as factually a potential justification for the search. The issue was not addressed by the State in its initial brief or in its supplemental brief to this Court. Since the trial judge ruled on the absence of standing, the State has tried to uphold the search on that ground. Powell maintains that during his bench trial, the State waived all potential legal claims with the exception of standing by what he calls a "stipulation." After the evidence was not suppressed, nine days later the trial was to begin. By then, Powell had agreed with the prosecutor to stipulate as to what witnesses would testify if called. As his attorney stated, Powell's defense "is solely related to the issue of the legality of the search and the introduction into evidence of the contraband."
¶ 19. The assistant district attorney, Walter Bleck, then described the evidence that he could introduce through various witnesses. He indicated that drugs were found after a drug dog had alerted on the vehicle. Powell gave a written statement that those drugs as well as others that were found inside the residence belonged to him. The state crime lab's analysis was introduced into evidence.
¶ 20. Powell's attorney followed by admitting the truth of the facts stated in the proffer. Then he made statements regarding acquiring and executing the search warrant that he called a stipulation. He agreed that a drug dog brought to assist in the search was let out of the law enforcement vehicle in order to relieve itself prior to beginning the search, and at that time alerted on the Merritt-Powell automobile. He then stated this:
when the dog alerted on the white Mazda automobile, the other officers were in the residence and the deputy sheriff of Winona and others outside near the car commenced the search of the automobile, without authority or without consent of the owner or anyone in possession *666 of the automobile and without a warrant.
¶ 21. There were a few more statements after that about what was found. Then the prosecutor responded to all of what Powell's attorney just said, which comprises four pages of transcript, by saying that he "would agree to that, Your Honor. We just wanted to make sure that the legal argument as to the motion that was had last week, all that is part of the record in this, so they understand why we argued the." The Court interrupted by saying that this would be done. Then the prosecutor stated that he wanted the record to include "all of the proceedings had previously before this Court concerning the suppression hearing." The trial judge agreed to "consider that [prior] testimony just like I would the proffers that have been made this morning."
¶ 22. We cannot find on this record that the issue of consent has been stipulated away. The State presented it to the trial judge at the suppression hearing through evidence and argument, but the trial judge rejected it. Then after the various recitals by both attorneys on the morning of the scheduled trial, the State asked that all that was presented in the earlier suppression hearing be considered by the trial judge and also be made a part of the appellate record. The trial court agreed. The motion to suppress the evidence had already been denied. Prosecutor Bleck's making certain that the record contained all that was presented on that point satisfied his obligation to have the entire issue available for review.
¶ 23. Powell's appellate argument that the issue of consent was abandoned is based on Bleck's failure to object to one part of the four-page recital that Powell's counsel made: officers "commenced the search of the automobile, without authority or without consent of the owner or anyone in possession of the automobile and without a warrant." The entire focus of this part of Powell's "stipulation" is the word "commenced." We read that, in light of the evidence introduced, as an entirely accurate point that the search commenced when the trunk of the vehicle was opened. That occurred before those at the vehicle knew that the person in possession had given authority or consent. The warrant did not apply. An agreement by the prosecutor to this statement did not waive the legal effect of the consent later obtained.
¶ 24. We also note that this stipulation did not waive the effect of the dog's alerting on the vehicle as a possible justification. Because of our ruling on consent, we do not reach that issue. There were stipulated facts but no limit to the law that would be applied.
¶ 25. The next procedural matter is whether the State's failure to add this as an alternative appellate basis to uphold the search somehow waives the issue. At least two legal arguments were presented at the suppression hearing. One was accepted and the other rejected by the trial court. Since the State is the appellee here, there was no need for it to make assignment of errors. A cross-appeal can be utilized by the State to challenge "a ruling adverse to the state or municipality in every case in which the defendant is convicted and prosecutes an appeal ...." Miss.Code Ann. § 99-35-103(c) (Rev.2000). In discussing this statute in the appeal of an habeas corpus matter, the Supreme Court found that when the State does not file a cross-appeal it cannot be heard "except in support of the decree of the trial court ...." Bishop v. Jones, 207 Miss. 423, 446, 42 So.2d 421, 426 (1949). The decree of the trial court here was to admit the evidence and to convict Powell of the offense. Thus there was no adverse ruling excluding evidence, only a rejection of one of alternative *667 legal argument. Whatever this statute covers, we do not find that it requires the State to file a cross-appeal in order to support a decree on legal grounds other than those adopted by the trial court.
¶ 26. Finally, we note that an appellate court may affirm a trial judge "on grounds other than that which the trial court used." Kirksey v. Dye, 564 So.2d 1333, 1336 (Miss.1990). On this question of law of the effect of obtaining the consent only after the trunk was opened, we are not foreclosed by the trial judge's adverse ruling and the failure of the State to argue it as an alternative.
¶ 27. Now that we have found that we may consider the issue of consent, we proceed to do so. The lower court determined that the consent obtained from Latisha Merritt was invalid because at the time notice of the consent was given to those at the vehicle, the initial stage of the search had commenced. The evidence that Powell is attempting to suppress was discovered by Agent Perkins after obtaining consent and rejoining the search team. Nothing incriminating was found until after the consent was obtained; indeed, it appears that the trunk was simply opened and the officers were standing nearby until Perkins returned. Their impatience was regrettable but not fatal to the search. Had, for example, Merritt consented after knowing that the search had already begun, she may have been coerced by the sense that refusing was futile. However, the trial court found that the consent was not the product of the premature commencement of the search. The exclusionary rule is to bar use of the fruit of the poisonous tree of a Fourth Amendment violation. Jones v. State, 798 So.2d 1241, 1247 (Miss.2001). No fruit was obtained by the premature opening of the trunk.
¶ 28. In addition, under the inevitable discovery doctrine, the results from an unreasonable search will be admissible if it can be shown that this evidence would have ultimately been discovered by constitutionally permissible means. Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984). It appears that the only defect was that the trunk was opened prior to the consent's being obtained. Regardless, even had the contraband been found prior to the officer's return from talking to Latisha Merritt, so long as her consent was uninfluenced by the early commencement of the search, then the drugs inevitably would have been discovered. The same consent and the same discovery would have occurred if the officers next to the vehicle had waited a few minutes more. The sequence was wrong, but the late-acquired but uncontaminated consent would have cured the search.
¶ 29. THE JUDGMENT OF THE MONTGOMERY COUNTY CIRCUIT COURT OF CONVICTION OF POSSESSION OF MORE THAN 500 GRAMS BUT LESS THAN ONE KILOGRAM OF MARIJUANA AND SENTENCE OF TWELVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FOUR YEARS SUSPENDED ON PROBATION, AND DRIVING PRIVILEGES SUSPENDED FOR SIX MONTHS, IS AFFIRMED. SENTENCE IMPOSED IN THIS CAUSE SHALL RUN CONSECUTIVELY TO ANY SENTENCE PREVIOUSLY IMPOSED. ALL COSTS ARE ASSESSED TO APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.