# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-00198-COA

EDDIE MCCOY, JR. A/K/A EDDIE W. MCCOY, JR.             APPELLANT
A/K/A WAYNE MCCOY A/K/A EDDIE WAYNE
MCCOY, JR. A/K/A EDDIE MCCOY

v.

STATE OF MISSISSIPPI                                APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 01/10/2013 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES HUNTER NOLAN AIKENS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JOHN R. HENRY JR. LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | PATRICIA A. THOMAS BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF POSSESSION OF A CONTROLLED SUBSTANCE WITH INTENT TO DISTRIBUTE AND SENTENCED AS A HABITUAL OFFENDER TO LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF PAROLE OR EARLY RELEASE |
| DISPOSITION: | AFFIRMED - 10/21/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., MAXWELL AND FAIR, JJ.**

**MAXWELL, J., FOR THE COURT:**

¶1.     Eddie McCoy was convicted of possession of cocaine with the intent to distribute.

The charge came after officers found 2.7 grams of cocaine, small plastic bags, scales, a gun, and brass knuckles in his girlfriend's apartment.

¶2.    On appeal, McCoy challenges the admission of this evidence. He argues it was unlawfully seized in violation of his Fourth Amendment rights. But Fourth Amendment rights are personal. And here McCoy failed to establish that *his* Fourth Amendment rights were violated. Instead, at the suppression hearing, McCoy stressed that he *did not* stay with his girlfriend in the apartment. Thus, he failed to show he had a legitimate expectation of privacy in the apartment. Additionally, we find the search was justified for two other independent reasons—exigent circumstances and consent. So the drug evidence was properly admitted.

¶3.    McCoy also challenges the sufficiency of the evidence. He suggests the State failed to prove beyond a reasonable doubt that he possessed the drugs. To prove constructive possession, the State had to show McCoy knowingly exercised control over the drugs. And McCoy claims that, since he did not own or exclusively control the apartment, the State could not prove he knowingly controlled what was inside. But when McCoy, who was in the apartment at the time, realized police officers had knocked on the door and were interviewing his girlfriend, he broke for the bathroom and tried to slam the door. When officers followed, they found him hovering over the trash can where cocaine and baggies were later found. From this, combined with scales and a pistol found near his clothes in another room and the more than $1,200 in cash found in his pocket, we find a reasonable juror could conclude McCoy knowingly possessed cocaine intending to distribute it.

2

¶4. Because we also find McCoy's right to a speedy trial was not violated and his claim of ineffective assistance of counsel cannot be evaluated on direct appeal, we affirm his conviction and sentence.

## Background

### I. Events Leading to Arrest

¶5. A confidential informant told the Hattiesburg Police Department that McCoy was selling drugs out of unit A-7 in Pineview Apartments. So officers went to the apartment for a "knock and talk." This investigative method involves a knock on the door and a request to interview the resident. Sometimes this leads to a search of the premises if the resident consents.

¶6. When the officers knocked, McCoy's girlfriend, Chante Robinson,[1] answered the door. Chante lived in the apartment with her mother, Cynthia Robinson, who leased the apartment. While the officers were talking with Chante, McCoy walked into the living room. Officers noticed McCoy had his hands shoved into his pockets.

¶7. When the officers asked if McCoy would speak to them too, McCoy darted to the bathroom and tried to shut the door. Fearing McCoy was either retrieving a weapon or destroying evidence, the officers ran into the bathroom. They found McCoy hovered over a trash can and escorted him outside of the apartment to wait with another officer.

¶8. At this point, Cynthia and Chante gave permission to search the apartment. And

---

[1] In the record, McCoy's girlfriend's name is spelled as both "Chante" and "Shaunte." This opinion uses "Chante"—the spelling used by McCoy.

3

inside the bathroom where McCoy had fled, the officers found a bag of cocaine in the trash can. They also found a cup containing small empty baggies. In Chante's bedroom, they found a set of scales, a gun, and brass knuckles. They arrested McCoy. During the search incident to arrest, they found more than $1,200 in cash in his pocket. McCoy was later indicted for possession of 2.7 grams of cocaine with the intent to distribute.[2]

## II.    Suppression Hearing

¶9.     Before trial, McCoy's counsel filed a motion to suppress the evidence found in the apartment. He argued the officers' search was illegal because the "knock and talk" was merely a pretext to get around the Fourth Amendment's warrant requirement.

¶10.    At the suppression hearing, the two officers who knocked on the door testified they did not believe, based on the informant's tip, they had sufficient probable cause to obtain a warrant, hence the "knock and talk." *See United States v. Jones*, 239 F.3d 716, 720 (5th Cir. 2001) (recognizing the "'knock and talk' strategy as a reasonable investigative tool when officers seek to gain an occupant's consent to search or when officers reasonably suspect criminal activity"); *see also Kentucky v. King*, 131 S. Ct. 1849, 1860 (2011) (recognizing law enforcement may have "entirely proper reasons" for not "seek[ing] a search warrant as soon as the bare minimum of evidence needed to establish probable cause is acquired").

¶11.    But when officers knocked, and as they were talking to Chante, exigent circumstances led them to enter the apartment. Based on McCoy's reaction, they believed he was either

---

[2] McCoy's indictment was amended to reflect McCoy's status as a habitual offender under Mississippi Code Annotated section 99-19-83 (Rev. 2007).

4

heading for a weapon or destroying evidence. So they ran after McCoy to stop him. The officers did not search the premises until Cynthia gave her written consent to search the apartment and Chante gave her verbal consent to search her bedroom.

¶12. Cynthia and Chante also testified at the hearing. Cynthia confirmed that, though the officers' presence made her nervous, she gave her consent to search "freely" because she "didn't have anything to hide." However, Chante's testimony was more equivocal. While she agreed she had let the officers in when she answered the door, she said she only gave her consent to search her bedroom because the officers threatened her. She was unwavering, however, on the fact McCoy did not stay in the apartment with her. One of the officers had testified that Chante told him McCoy had been living in the apartment for several months. But Chante disagreed. She claimed she never said McCoy stayed there.

¶13. McCoy's grandmother was also called to the stand. She testified that McCoy stayed with her, not Chante.

¶14. The circuit judge sized up this testimony and concluded McCoy did not occupy the apartment with Chante and her mother. Consequently, he had no Fourth Amendment rights in the property he could claim were violated. The judge also found the person who *did* have rights—Cynthia—had freely consented to a search. So he denied McCoy's motion to suppress.

### III. Trial

¶15. At trial, the same two officers testified for the State. They described the events that led to the seizure of the drugs, baggies, scales, gun, brass knuckles, and cash. All of these

items were entered into evidence.

¶16.   The officers testified how McCoy had immediately run to the bathroom when he saw them talking to Chante.  And they described how he tried to block them from the bathroom, and how they had found the cocaine in the trash can he was standing over.  Both officers also mentioned that, as they were escorting McCoy out of the apartment, he yelled at Chante to "hold up for your shit."  They interpreted this as McCoy's instruction to Chante to claim the cocaine was hers.

¶17.   At the close of the State's evidence,[3] McCoy moved for a directed verdict, which was denied. McCoy's only witness was his grandmother, who testified McCoy lived with her and only "ever[y] now and then" stayed overnight with Chante.

¶18.   The jury found McCoy guilty of possession of a controlled substance with intent to distribute.  The court sentenced him as a habitual offender to life in the custody of the Mississippi Department of Corrections without the benefit or possibility of parole or early release.  *See* Miss. Code Ann. § 99-19-83 (Rev. 2007).  McCoy immediately appealed.  On appeal, he is represented by the Indigent Appeals Division (IAD) of the Office of State Public Defender.  In addition to the IAD's brief, McCoy filed a supplemental pro se brief. *See* M.R.A.P. 28(b).

**Discussion**

---

[3]  The State also called the officer who took the bag of cocaine from the apartment to the crime lab and the crime lab's forensic scientist, who confirmed the lab's test results that the bag contained 2.7 grams of cocaine.

6

### I. Motion to Suppress

¶19. Both briefs suggest the items found in the apartment should have been suppressed. As McCoy and his appellate counsel see it, this evidence was inadmissible "fruit of the poisonous tree," obtained in violation of the Fourth Amendment. *See Powell v. State*, 824 So. 2d 661, 667 (¶27) (Miss. 2002) (citing *Jones v. State*, 798 So. 2d 1241, 1247 (¶10) (Miss. 2001)).

¶20. While the exclusionary rule bars the use of evidence from unlawful seizures, Fourth Amendment rights are personal. *Walker v. State*, 913 So. 2d 198, 225 (¶90) (Miss 2005) (citing *Alderman v. United States*, 394 U.S. 165, 174 (1969)). What this means is that McCoy could only invoke the exclusionary rule if *his* Fourth Amendment rights were violated. *See id.* And under the circumstances here, we agree with the trial judge that McCoy had no Fourth Amendment right to prevent a search or seizure of his girlfriend's mother's apartment.

### A. No Legitimate Expectation of Privacy

¶21. As recently summed up by the Mississippi Supreme Court, "[t]he Fourth Amendment of the U.S. Constitution and Article 3, Section 23 of the Mississippi Constitution protect[] *occupants* of a home from warrantless and nonconsensual entry by police." *Cooper v. State*, 145 So. 3d 1164, 1174 (¶33) (Miss. 2014) (citing *Minnesota v. Olson*, 495 U.S. 91, 95 (1990); *Payton v. New York*, 445 U.S. 573, 589-90 (1980)). "[T]o claim protection under the Fourth Amendment, a defendant must have a 'legitimate expectation of privacy in the invaded place[.]'" *Id.* (quoting *Olson*, 495 U.S. at 95). Fourth Amendment protection is

"typically restricted to those who rent, own, or otherwise reside in the dwelling." *Id.* McCoy argues he falls into the "otherwise reside" category, alleging he often stayed overnight with his girlfriend, Chante, in her mother's apartment. *See Olson*, 495 U.S. at 95 (holding that an "overnight guest" has a reasonable expectation of privacy in his host's home). But the evidence he offered at the suppression hearing contradicts this claim.

¶22.    On appeal, McCoy shifts gears. He now relies on the officer's testimony that Chante told him that McCoy had been living in the apartment for several months. But when McCoy called Chante to the witness stand, she denied saying this. Instead, when questioned by both McCoy's counsel and the State, she consistently maintained McCoy *did not* stay in the apartment.[4]

---

[4] On direct examination, Chante testified:

Q:    When [the officers] asked you, Does [McCoy] stay at the residence with you, and does he have clothes in there, you answered what?

A:    I answered he has some clothes there.

Q:    Okay. What did you answer with respect to him staying there?

A:    *He does not stay there.*

And on cross-examination, she further said:

Q:    [A]m I understanding you right, it's your testimony that Eddie McCoy did not reside there?

A:    He does not. *He did not stay there.*

Q:    He didn't stay there; he didn't receive mail there?

8

¶23. McCoy also called his grandmother, whose brief testimony solely consisted of the fact that McCoy lived with her when he was arrested. Granted, the grandmother did later testify at trial that McCoy stayed with Chante "ever[y] now and then." But this testimony came at the end of the trial, *after* the evidence found in the apartment had already been admitted by the judge. Further, this testimony did not establish McCoy was staying with Chante when the officers knocked on her door.

¶24. McCoy's appellate counsel asks us to assume McCoy had been staying overnight in the apartment because he was dating Chante. But it was McCoy's burden to establish he had a Fourth Amendment right invaded by the search of the apartment. *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978) (citations omitted). And during the suppression hearing, instead of trying to establish his legitimate expectation of privacy in the apartment, McCoy tried to prove the opposite—that he was *not* an occupant. This strategy of distancing himself from the apartment was no doubt to bolster his defense that he had no knowledge or control over the cocaine and contraband found there.

¶25. Because McCoy failed to establish he had a legitimate expectation of privacy in the

---

A:     He did not receive mail there. They asked that same question. I told them no.

Q:     Okay. Didn't receive mail there. So would he have the right to tell people that they couldn't come in, exclude other people from the premises?

A:     *He don't be there like that to even have to answer a question like that.*

(Emphasis added).

9

apartment, his argument that the judge wrongly admitted the evidence found there also fails.

### B. No Warrant Required Under the Circumstances

¶26. But even if we *did* assume McCoy had been staying overnight with Chante during the time period of the search, his Fourth Amendment argument still falters. The presumption that a warrantless entry into a home to conduct a search or make an arrest is unreasonable has two notable exceptions—exigent circumstances and consent. *See Stegald v. United States*, 451 U.S. 204, 211-12 (1981) (citing *Payton*, 445 U.S. 573; *Johnson v. United States*, 333 U.S. 10, 13-15 (1948)). And here we have both.

### 1. Exigent Circumstances

¶27. "It is well established that 'exigent circumstances,' *including the need to prevent the destruction of evidence*, permit police officers to conduct an otherwise permissible search without first obtaining a warrant." *King*, 131 S. Ct. at 1854-54 (emphasis added). So long as "the police did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment, warrantless entry to prevent the destruction of evidence is reasonable and thus allowed." *Id.* at 1858.

¶28. Citing *King*, McCoy's appellate lawyer argues the officers could not rely on the exigent-circumstances doctrine because they had already violated the Fourth Amendment when the exigency arose by bullying their way into the apartment. But we see no police-created exigency. Chante testified she voluntarily opened the door. She said she did so even though she could not see through the peephole who was on the other side and the only word she heard from the officers was "Hattiesburg." Though she was surprised to find police

10

officers at the door, she admitted she "let them in" and voluntarily answered their questions.

¶29. When McCoy walked in on their interview, instead of refusing to speak to the officers or asking them to leave, he ran to the bathroom and tried to slam the door. *See id.* ("Occupants who choose not to stand on their constitutional rights but instead elect to attempt to destroy evidence have only themselves to blame for the warrantless exigent-circumstances search that may ensue."). The officers had gone to the apartment to follow up on a tip that McCoy was selling drugs out of the apartment. So it was reasonable for them to believe McCoy had run to the bathroom to destroy evidence. *See id.* at 1857 ("Destruction of evidence issues probably occur most frequently in drug cases because drugs may be easily destroyed by flushing them down a toilet or rinsing them down a drain."). Thus, we find the exigent circumstances justified the officers to enter the apartment to stop McCoy. And once in the bathroom, the officers were further justified to detain McCoy and escort him outside of the apartment.[5]

---

[5] In his pro se brief, McCoy characterizes his removal from the bathroom as an arrest, which he claims was illegal because the officers had yet to find the evidence against him in the apartment. But at this point McCoy was merely being detained, based on the officers' reasonable suspicion that he had been dealing drugs, formed by the tip and McCoy's behavior when he saw the officers. *See Singletary v. State*, 318 So. 2d 873, 876 (Miss. 1975) ("hold[ing] that given reasonable circumstances an officer may stop and detain a person to resolve an ambiguous situation without having sufficient knowledge to justify an arrest"). While McCoy was detained, the officers gained consent to search the apartment and found the drugs McCoy was trying to destroy, along with the other incriminating items in the apartment. At this point, the officers then had probable cause to arrest McCoy. *See id.* (holding that "[a]n arrest may be made only when the officer has probable cause"). And based on this arrest, they were permitted to search McCoy's pockets, where they found the cash. *See Williams v. State*, 763 So. 2d 202, 204 (¶8) (Miss. Ct. App. 2000) (citing *United States v. Robinson*, 414 U.S. 218, 235 (1973)) ("There is no violation of the Fourth

11

## 2. Consent

¶30. This brings us to the point in the sequence of events when the actual search—the search McCoy claims was unlawful—occurred. And what the record shows is that this search was only conducted *after* the officers obtained written consent from Cynthia, the apartment's leaseholder. So the "fruit" was not borne of a "poisonous tree" but rather from a legal search of the apartment. *See Graves v. State*, 708 So. 2d 858, 863 (¶23) (Miss. 1997) (citations omitted) ("A voluntary consent to a search eliminates an officer's need to obtain a search warrant.").

¶31. In *Powell*, this court found the defendant had a legitimate expectation of privacy in his girlfriend's car. This was because he had permission to drive the car whenever he wanted and could exclude anyone from the car except his girlfriend and her father, the title holder of the vehicle. *Powell*, 824 So. 2d at 664-65 (¶15). But we still decided the defendant's Fourth Amendment rights were not violated when officers searched the vehicle. There was no constitutional violation because "the State presented uncontested evidence that the [girlfriend, the] person given possession by the lawful owner[,] had consented to the search." *Id.* at 665 (¶16), 667 (¶¶27-28). We find the same to be true here. Even if McCoy had a legitimate expectation of privacy in the apartment, he failed in his burden to show the search of the apartment violated his Fourth Amendment rights because the State offered uncontested

Amendment when a person, placed under lawful arrest, is subjected to a full search of his person.").

12

evidence[6] the apartment's lessee had consented to the search.

¶32.   Thus, we find no error in the denial of McCoy's motion to suppress.

## II.   *Motion for Directed Verdict*

¶33.   Nor do we find error in the denial of McCoy's motion for a directed verdict. A motion for a directed verdict challenges the sufficiency of the evidence. *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005). And here, contrary to McCoy's assertions, we find the State's evidence was sufficient to support the charged cocaine offense.

¶34.   When considering the sufficiency of the evidence, we view all evidence in the light most favorable to the State. *Id.* This means we "give the State the benefit of all favorable inferences reasonably drawn from the evidence." *Grossley v. State*, 127 So. 3d 1143, 1147 (¶10) (Miss. Ct. App. 2013) (citing *Jones v. State*, 20 So. 3d 57, 64 (¶16) (Miss. Ct. App. 2009)). Viewing the evidence in this manner, we ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bush*, 895 So. 2d at 843 (¶16) (quoting *Jackson v. Virginia*, 443 U.S. 307, 315 (1979)).

¶35.   The essential element McCoy claims is missing was his possession of the drugs and other distribution-related items found in the apartment. He does not attack the sufficiency

---

[6] In his pro se brief, McCoy challenges the legitimacy of Cynthia's consent. He alleges she was not competent to consent because she was under the influence of prescription drugs at the time. But this argument totally relies on documents that are not part of the record and thus outside the scope of our consideration. *See Keller v. State*, 138 So. 3d 817, 874 (¶168) (Miss. 2014) (citing *Tanner v. State*, 764 So. 2d 385, 402 (¶47) (Miss. 2000)). What the record shows is that Cynthia testified at the suppression hearing that her consent had been "freely given."

of the State's evidence of his intent to distribute cocaine.

¶36.   The State's theory was that McCoy constructively possessed the cocaine and baggies found in the bathroom, as well as the scales, brass knuckles, and gun found in Chante's bedroom.  "Possession of a controlled substance may be actual or constructive." *Knight v. State*, 72 So. 3d 1056, 1063 (¶26) (Miss. 2011) (citing *Dixon v. State*, 953 So. 2d 1108, 1112 (¶9) (Miss. 2007)).  "Constructive possession may be established where the evidence, considered under the totality of the circumstances, shows that the defendant knowingly exercised control over the contraband." *Id.*  "The defendant's proximity to the drugs is a factor in establishing constructive possession, but it is not determinative." *Id.*  "Other incriminating circumstances must be present to establish constructive possession." *Id.*

¶37.   McCoy claims that the State was only able to prove his proximity to the drugs.  He insists no "other incriminating circumstances" were present because McCoy neither owned nor exerted exclusive control over the apartment.  It is true that proving ownership or control over the premises are two ways to support a constructive-possession theory. *See id.*  But they are not the only ways.[7]  The supreme court has also "affirmed a conviction based on

_____

[7] As the Mississippi supreme court said in *Dixon*:

> In previous decisions, this Court has affirmed a conviction based on constructive possession when: (1) The defendant owned the premises where the drugs were found and failed to rebut the presumption that he was in control of such premises and the substances within; or (2) the defendant did not own the premises but was sufficiently tied to the drugs found there by (a) exerting control over the premises when he knew or should have known of the presence of the substance or (b) placing himself in the midst of items implicating his participation in the processing of the substance.

14

constructive possession when . . . the defendant did not own the premises but was sufficiently tied to the drugs found there by . . . *placing himself in the midst of items implicating his participation in the processing of the substance.*" *Dixon*, 953 So. 2d at 1113 (¶11) (emphasis added).

¶38.    Here, we find ample evidence that McCoy constructively possessed the cocaine. McCoy was seen with his hands stuffed into his pockets. Once he saw the police, he ran hard for the bathroom, slamming the door to keep the officers out. And when the officers got to him, he was standing over the trash can where the drugs were found. This was more than mere proximity to the drugs. From this incriminating circumstance, it was reasonable for jurors to conclude McCoy was trying to hide or destroy drugs. This alone showed he had sufficient knowledge and control over the cocaine to have constructively possessed it.

¶39.    Further, his yelling to Chante, "Hold up for your shit," shows his knowledge of drugs in the trash. And while the other drug-related items were found in another room, they were near where McCoy had stored some of his clothes, which could lead a reasonable juror to conclude he was also storing the scales, brass knuckles, and gun there.[8] *See Hemphill v. State*, 566 So. 2d 207, 209 (Miss. 1990) (guns and scales are "tools of the drug trade" and generally relevant in drug cases); *see also Martin v. State*, 413 So. 2d 730, 733-34 (Miss.

---

*Dixon*, 953 So. 2d at 1113 (¶11). Further, the supreme court noted this list was not exhaustive. *Id.* at n.2.

[8] While the jury heard evidence that the gun was registered to Chante, they also heard one of the officers testify Chante had bought the gun for McCoy.

1982). Further, McCoy had been found in *actual* possession of the cash. *See United States v. Munoz*, 957 F.2d 171, 174 (5th Cir. 1995) (holding proof of intent to distribute the drugs may be inferred from the presence of "large quantities of cash").

¶40. Thus, we find the evidence, when viewed in the light most favorable to the State, supports McCoy's conviction of possession of cocaine with intent to distribute.

### III. Speedy Trial

¶41. In his pro se brief, McCoy additionally asserts his right to a speedy trial was violated. But we fail to see any violation, given the length of the delay and the fact McCoy never asserted his right to a speedy trial until now.

¶42. Both the United States and Mississippi Constitutions guarantee the accused the right to "a speedy and public trial." U.S. Const. amend. VI; Miss. Const. art. 3, § 26. "A formal indictment or information or an arrest—whichever first occurs—triggers" this right. *McBride v. State*, 61 So. 3d 138, 142 (¶8) (Miss. 2011) (citations omitted). Here, McCoy's March 31, 2012 arrest preceded his September 20, 2012 indictment. So for speedy-trial purposes, the clock began running on March 31, 2012. McCoy was tried on January 9, 2013—more than eights months later. And "[i]n Mississippi, a delay of more than eight months is presumptively prejudicial." *Id.* at (¶7). But the length of delay is only one of four factors that must be considered when a speedy-trial violation is alleged. *See id.* at (¶5) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). This factor must be considered alongside the reason for delay, whether McCoy asserted his right to a speedy trial, and whether any prejudice resulted from the delay. *See id.* (listing the four-factor test from *Barker*, 407 U.S.

16

at 530).

¶43.    Here, the length of delay, though presumptively prejudicial, is just barely so—only nine days over the presumptive threshold.

¶44.    The record is silent on the reason for the delay of eight months and nine days—except it does show McCoy, who had been out on bail since his March arrest, was indicted by the grand jury in September, arraigned a month later in October, and tried three months later the following January.

¶45.    *Why* there is no explanation for the delay ties into the third factor—the assertion of right.  The Mississippi Supreme Court has said that, while "[a]n accused has no duty to bring himself to trial[,] . . . he does have some responsibility to assert his right to a speedy trial." *Id.* at 144 (¶20) (internal citations omitted).  And the United States "Supreme Court in *Barker* emphasized 'that failure to assert the right to a speedy trial will make it difficult for a defendant to prove that he was denied a speedy trial.'"  *McBride*, 61 So. 3d at 144 (¶20) (quoting *Barker*, 407 U.S. at 532).  During the eight months and nine days between his arrest and trial, McCoy never asserted his right to a speedy trial.  Nor did he seek dismissal from the trial court based on the violation of his speedy-trial rights, which would have prompted the trial court's own *Barker* analysis and evidentiary hearing.  McCoy claims he verbally asserted his right to a speedy trial as soon as he was arrested on March 31, 2012.  But there is simply nothing in the record to support this.

¶46.    Finally, McCoy has not shown prejudice, though he has alleged it—claiming that a witness with the potential to exonerate him died during the delay.  McCoy claims this man

17

visited the apartment right before the police showed up that day and "very well may have left the alleged item(s) there in the waste basket of the bathroom/restroom." But this unidentified man's existence—let alone his death—is in no way verified from the record. Thus, McCoy has failed to establish his defense was hampered by the delay. And as McCoy was free on bail pending his trial, we find no actual prejudice by the delay.

¶47. According to the supreme court, "where the delay is neither intentional nor egregiously protracted, and there is an absence of actual prejudice to the defense, the balance is struck in favor of rejecting a speedy trial claim." *Johnson v. State*, 68 So. 3d 1239, 1246 (¶22) (Miss. 2011) (quoting *Stevens v. State*, 808 So. 2d 908, 918 (¶29) (Miss. 2002)). Because such is the case here, we reject McCoy's claim that his conviction should be reversed based on a violation of his right to a speedy trial.

### IV. *Ineffective Assistance of Counsel*

¶48. Lastly, McCoy has raised in his pro se brief a claim of ineffective assistance of counsel, alleging various deficiencies by his trial counsel. When a claim of ineffective assistance is raised on direct appeal, we will only consider its merits under two circumstances—(1) where the parties have stipulated the record is adequate for us to make an independent finding or (2) where "the record affirmatively shows ineffectiveness of constitutional dimensions[.]" *Gill v. State*, 126 So. 3d 128, 133-34 (¶27) (Miss. Ct. App. 2013) (quoting *Colenburg v. State*, 735 So. 2d 1099, 1101 (¶5) (Miss. Ct. App. 1999)). In other words, the record must show counsel's performance was so constitutionally deficient and prejudicial that the trial court should have declared a mistrial sua sponte. *See id.* at 134

18

(¶27) (citing *Colenburg*, 735 So. 2d at 1102 (¶8)).

¶49.    Here, the parties have not stipulated the record is adequate for us to address McCoy's claims.  Nor can we see from the record any reason the trial judge should have been alerted to any deficiencies in counsel's performance.  Therefore, we decline to address the issue of trial counsel's performance on direct appeal.  We dismiss McCoy's claim without prejudice, leaving open the possibility to make these same assertions in a motion for post-conviction relief.  *See id.* at (¶30).

¶50.    **THE JUDGMENT OF THE FORREST COUNTY CIRCUIT COURT OF CONVICTION OF POSSESSION OF A CONTROLLED SUBSTANCE WITH INTENT TO DISTRIBUTE AND SENTENCE AS A HABITUAL OFFENDER OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF PAROLE OR EARLY RELEASE IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO FORREST COUNTY.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON AND FAIR, JJ., CONCUR.  IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.  JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**